FILED

EFILED

BILLINGS DIV.

2007 NOV 16   AM 10 09

PATRICK E. DUFFY, CLERK

BY _____
           DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| RALPH MARCHER[1], | CV-07-54-BLG-RFC-CSO |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF MAGISTRATE JUDGE REVERSING COMMISSIONER'S DECISION AND REMANDING FOR CALCULATION OF BENEFITS** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration | |
| Defendant. | |

Plaintiff Sharon Marie Marcher ("Marcher") initiated this action to obtain judicial

review of the decision of Defendant Commissioner of Social Security ("Commissioner")

denying her application for Disability Insurance Benefits ("DIB") under Title II the Social

Security Act ("the Act"), 42 U.S.C. §§ 401-33.

Now pending before the Court[2] are Marcher's motion for summary judgment

_____

[1]Sharon Marie Marcher died of heart failure on July 17, 2007.  Her husband, Ralph Marcher, was substituted as the plaintiff in this action by Order of this Court dated August 23, 2007 (Court's Doc. No. 17).

[2]By Order (Court's Doc. No. 8) filed June 14, 2007, United States District Judge Richard F. Cebull referred this case to the undersigned for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), including submission of proposed findings and recommendations.

1

(*Court's Doc. No. 11*) and the Commissioner's motion for summary judgment (*Court's Doc. No. 13*). Having considered the issues presented by the parties, together with the administrative record, the Court hereby recommends that Marcher's motion for summary judgment be granted, the Commissioner's decision be reversed, and the case remanded for calculation of benefits.

## I.   PROCEDURAL BACKGROUND

Marcher filed an application for DIB on March 11, 2006. *Tr.* 40-44. She alleged that she had been unable to work due to a disabling condition since September 20, 2003. *Tr.* 40.

The Social Security Administration ("SSA") denied Marcher's applications initially and on reconsideration. *Tr.* 27-29, 32-33. Administrative Law Judge ("ALJ") Michael A. Kilroy held an administrative hearing on June 1, 2006, at which Marcher appeared with counsel. *Tr.* 293. The ALJ issued a written decision, dated August 23, 2006, in which he found that Marcher was not disabled within the meaning of the Act. *Tr.* 11-19. On February 8, 2007, the Appeals Council denied Marcher's request for review of the hearing decision,(*Tr.* 4-6), making the ALJ's determination the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981, 416.1481 (2007). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the

2

decision is based on legal error. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

## III.   **BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage

3

in any other kind of substantial gainful work which exists in the national economy."

Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42

U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-

step sequential evaluation process.  Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994)

(citing 42 U.S.C. § 1382C(a)(3)).

1.    The claimant must first show that he or she is not currently engaged in substantial gainful activity.  Id.

2.    If not so engaged, the claimant must next show that he or she has a severe impairment.  Id.

3.    The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4.    If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments.  Corrao, 20 F.3d at 946.

5.    Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity.  Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this

process, the review process is terminated.  Corrao, 20 F.3d at 946.

## IV.    DISCUSSION

### a. The ALJ's Opinion

From a review of the evidence in the record, and the testimony presented at the

hearing on Marcher's claim, the ALJ, following the five-step sequential evaluation

4

process, first found that Marcher had not engaged in substantial gainful activity since September 20, 2003.  *Tr.* 13 (*Finding No. 2*).  Second, the ALJ found that the medical evidence established that Marcher had medically determinable "severe" impairments of shortness of breath, history of heart disease, and chronic back pain.  *Tr.* 13 (*Finding No. 3*).

The ALJ noted Marcher's claim that her sleep apnea impaired her ability to work. The ALJ did not find that Marcher's sleep apnea was a severe impairment, however, because he found that there was no record as to whether Marcher's use of a CPAP device and sleep aid had remedied or would remedy the problem.  *Tr.* 14.  Thus, he concluded that there was no evidence from which he could find that Marcher's sleep apnea significantly limited her ability to perform basic work activities.  *Tr.* 14.

Next, the ALJ found that Marcher did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments.  *Tr. 14* (*Finding No. 4*).  The ALJ reached this conclusion because none of Marcher's treating or examining physicians reported "any of the necessary clinical, laboratory, or radiographic findings specified [in the C.F.R.]."  *Tr. 14.*  The ALJ also noted that he considered the effect of Marcher's obesity in determining whether her impairments met or medically equaled any listed impairment, as well as the effect of her obesity on her residual functional capacity.  *Tr.* 14.

The ALJ next found that Marcher had the following residual functional capacity:

> the claimant has the residual functional capacity to lift 10
> pounds occasionally and less than 10 pounds frequently.

> She is able to walk for up to 2 blocks at a time, stand for 1
> ½ to 2 hours at a time, and sit for up to 2 hours at a time
> throughout an 8 hour workday. She must have the ability to
> alternate positions as needed. She is limited to occasional
> balancing, stooping, kneeling, and crouching, as well as
> occasional stair climbing of no more than 1 or 2 flights of
> stairs at a time. However she is limited to crawling on an
> infrequent basis, and precluded from climbing ropes,
> ladders, or scaffolds. She must work in positions which do
> not require constant focus or attention throughout the shift,
> and is not in a high stress situation. She must further avoid
> concentrated exposure to extreme cold, humidity, or heat;
> as well as concentrated exposure to fumes, odors, dust, or
> gases and working around hazardous machinery or heights.

Tr. 14-15 (Finding No. 5)

The ALJ emphasized that he considered all symptoms and the extent to which such symptoms were consistent with the evidence, as well as opinion evidence, as required by provisions of the C.F.R. and certain Social Security Rulings. Tr. 15. The ALJ found that, though Marcher's impairments could reasonably have produced her alleged symptoms, Marcher's testimony regarding the "intensity, persistence and limiting effects" of her symptoms was not always credible. Tr. 16. The ALJ noted that Marcher's treating physician actually found a less restrictive functional residual capacity than the ALJ did. Tr. 16.

In addition, the ALJ stated that Marcher engaged in a wide variety of daily living activities. Tr. 16. Based on the evidence and the treating physician's opinion, the ALJ found Marcher was not fully credible in her claims that she had was completely unable to engage in substantial gainful activity. Tr. 16.

The ALJ found the opinions of the reviewing state physician to be well supported

6

by the record, but accorded them minimal weight because he found the clinical findings, opinions and assessments of the treating and examining physicians more persuasive. *Tr.* 16-17.

The ALJ gave "significant" weight to the opinion of the treating physician, Dr. Michels, that Marcher was limited to climbing one flight of stairs at a time and walking two blocks at a time. *Tr.* 17. The ALJ afforded little weight, however, to Dr. Michels' opinion that Marcher was incapable of gainful employment, as this is an issue reserved to the Commissioner under the C.F.R. *Tr.* 17. Also, the ALJ noted Dr. Michels' opinion that Marcher had no lifting capability was unsupported by any objective evidence in the file. *Tr.* 17.

The ALJ next found that Marcher was unable to perform any past relevant work, that she was an individual of advanced age on her alleged onset date and an individual closely approaching retirement age at the time of the hearing. *Tr.* 17 (*Findings No. 6-7*). Additionally, Marcher could communicate in English and had at least a high school education. *Tr.* 17 (*Finding No. 8*). Also, Marcher had acquired a number of work skills from past relevant work. *Tr.* 17 (*Finding No. 9*).

Next, the ALJ found that Marcher's work skills from past relevant work were "transferable to other occupations with jobs existing in significant numbers in the national economy." *Tr.* 17-18 (*Finding No. 10*). This conclusion was drawn from the testimony of a vocational expert in combination with Marcher's age, education, work experience, and residual functional capacity. *Tr.* 18. The ALJ thus concluded Marcher

7

was not disabled under the Act.  *Tr.* 18-19 (*Finding No. 11*).

### b. The Parties' Arguments

Marcher argues the ALJ's decision is not supported by substantial evidence.  She states the ALJ did not give proper weight or consideration to the opinions of her treating physicians that Marcher was not employable.  *Plaintiff's Motion for Summary Judgment (Court's Doc. No. 11) at 1* (July 20, 2007).  Marcher contends that, though the ALJ stated he was giving minimal weight to the state reviewing physician's opinion, and substantial weight to that of the treating physicians, the ALJ proceeded to "basically ignore" the opinions of the treating physicians.  *Id. at 3.*  While the ALJ gave significant weight to the limitations placed on Marcher's walking and climbing by Dr. Michels, Marcher's treating physician, the ALJ did not give significant weight to Dr. Michels' opinion that Marcher was incapable of employment.  *Id.*  Marcher argues this opinion, and the opinion of Dr. Thigpen that her sleep apnea would cause her fatigue and concentration difficulties, are unrebutted.  *Id.*  Further, Marcher argues that the ALJ substitutes his medical opinion for the opinion of the treating physician when he discounts Dr. Michel's opinion that Marcher had no lifting capacity.

The Commissioner argues that the ALJ did not err in giving no weight to Dr. Michel's opinion that Marcher was disabled and in finding Marcher to be not fully credible.  The Commissioner states that the ALJ properly gave clear and convincing reasons for not finding Marcher credible.  *Def.'s Memo. in Supp. of Def.'s Mot. for Summary Judgment (Court's Doc. No. 14) at 4* (August 20, 2007).  For example, he

states that Marcher's testimony was inconsistent with the medical evidence, which did not indicate her activities were significantly limited. *Id. at 5.* In May 2006, Dr. Michels assessed Marcher's ability to work, finding she could lift 20 pounds occasionally and 10 frequently; walk two hours in an eight hour shift; and sit, push and pull without limitation. *Id.* The Commissioner states that as the treating physician, Dr. Michel's opinion that Marcher had these capabilities is entitled to great weight. *Id.* Additionally, the Commissioner argues Marcher's daily activities were inconsistent with her alleged limitations. *Id.*

The Commissioner argues the ALJ had specific, legitimate reasons for rejecting portions of Dr. Michel's opinion. *Id. at 6.* Dr. Michel's opinion that Marcher was disabled is an issue reserved to the Commissioner and not entitled to special significance. *Id.* The ALJ gave little weight to Dr. Michel's opinion that Marcher could do no lifting because it was not supported by any objective medical evidence. *Id.* The ALJ also noted he gave Marcher a more restrictive residual functional capacity than Dr. Michels did. *Id.* The Commissioner further notes – though the ALJ did not expressly mention – that Dr. Michels' opinion of Marcher's ability to lift was inconsistent with Marcher's own testimony at the hearing, and with Dr. Michels' own opinion of May 2006. *Id. at 7.* The Commissioner states it was the ALJ's duty to resolve these conflicts in the evidence, and where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Id.*

The Commissioner next states that the ALJ found a residual functional capacity

9

consistent with, and more restrictive than, those recommended by Dr. Michels and the state agency physician. *Id. at 8.* The residual functional capacity found by the ALJ also included all limitations claimed by Marcher, and was not inconsistent with Dr. Thigpen's opinion that Marcher was fatigued. *Id.*

Finally, the Commissioner argues that the ALJ properly found at step four that Marcher could not perform her past relevant work, and then properly found at step five that Marcher could perform other work existing in significant numbers in the national economy by relying on a vocational expert's testimony.

In her reply, Marcher argues Dr. Michel's opinion that Marcher was incapable of employment was not in contradiction with Dr. Michels' functional capacity finding. Additionally, Marcher points out that the ALJ himself never expressly mentioned the inconsistency between Dr. Michels' opinion that Marcher was unable to lift anything and the contrary evidence in rejecting portions of Dr. Michels' opinion.

Marcher also argues that the ALJ did not make proper credibility findings. Marcher argues her daily living activities are not inconsistent with disability, and that the medical evidence shows her activities were significantly limited. Finally, Marcher argues that the ALJ erroneously concluded at the fifth step that the evidence showed she was capable of employment, and reiterates that the ALJ erred in rejecting Dr. Michels' opinion that Marcher was disabled.

**c.    Analysis**

For the reasons set forth below, the Court finds the ALJ  erred in concluding that

10

Marcher is not disabled.  The findings of the ALJ at steps one through four are

supported by substantial evidence and not based upon legal error.  Marcher does not

contest the ALJ's findings on steps one through four.  Marcher contests only the ALJ's

conclusion at step five that she is not disabled.  Marcher essentially argues that there

are two reasons the ALJ's conclusion at step five is erroneous: (1) the ALJ found

Marcher not fully credible, and thus discounted some of her testimony; and (2), the ALJ

did not give significant weight to portions of Dr. Michels' opinion and all of Dr.

Thigpen's opinion.

### 1.    The ALJ's conclusion Marcher was not credible

The ALJ did not properly discount Marcher's credibility.  An ALJ must present

clear and convincing reasons for rejecting a claimant's testimony.  Lester v. Chater, 81

F.3d 821, 834 (9th Cir. 1995).  In this regard, "the ALJ must identify what testimony is

not credible and what evidence undermines the claimant's complaints."  Id.

Here, the ALJ specifically noted which portions of Marcher's testimony he did not

find credible, but the evidence he cites does not amount to clear and convincing

reasons for rejecting Marcher's testimony about the severity of her symptoms.  If

appears that he backed into the credibility finding when he stated that Marcher could

be "found credible only to the extent that she is limited to the residual functional

capacity" that he found.  Tr. 16.   Marcher's treatment notes from August 2003 to June

2005, cited by the ALJ, do not support the ALJ's conclusion that there was minimal

objective evidence of record to support Marcher's alleged limitations.  Tr. 16, 108, 126,

11

128, 149, 187, 219-22, 230-31, 236-38.  These treatment notes indicate Marcher's chronic cough persisted throughout this period in combination with asthma, valvular heart disease, coronary artery disease, congestive heart failure, fatigue, dyspnea, intermittent back and chest pain, and neurodermatitis.  *Tr.* 108, 123, 128, 131-32, 151, 189, 216, 221, 251, 253, 255, 283.  As of November 29, 2005, Marcher was taking at least eighteen medications on a daily basis.  *Tr.* 283.  In short, the objective medical record supports  Marcher's testimony.  The ALJ does not cite to clear and convincing reasons to reject Marcher's testimony as to the severity of her symptoms.

The ALJ also erred in finding Marcher's daily activities, such as self care, cooking, shopping, several hours a day on the computer, and sewing, were inconsistent with her alleged limitations.  *Tr.* 16.  Though an ALJ may consider a claimant's daily activities in assessing credibility, "[t]his line of reasoning clearly has its limits."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Thus, a claimant need not "be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."  Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  Put another way, "claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Marcher's modest daily activities are not inconsistent with her alleged limitations and do not constitute a clear and convincing reason to reject her testimony.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (ordering benefits even though

claimant was able to cook meals and wash dishes, lift 5 to 10 pounds, and take short walks).

### 2.    The ALJ's consideration of treating physicians' opinions

The ALJ properly discounted Dr. Michels' opinion that Marcher was disabled, but improperly discounted Dr. Michels' opinion that Marcher had no lifting capability. Additionally, the ALJ did not properly consider Dr. Thigpen's letter regarding Marcher's fatigue due to sleep apnea.

Typically, the treating source physician's opinion is entitled to special weight.  20 C.F.R. §§ 404.1527, 416.927(2007); Social Security Ruling 96-2p.  The ALJ may, however, disregard the opinion of a treating physician where there is conflicting medical evidence by noting specific and legitimate reasons based upon substantial evidence.  Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1463 (9th Cir. 1995).  Such specific and legitimate reasons include evidence that the treating physician's opinion is conclusory with little support from clinical findings, or inconsistent with the physician's contemporaneous findings.  Id.; Magellanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  In addition, the ALJ will not give any special significance to a treating physician's opinion that a claimant is disabled or unable to work, because these are not medical opinions, rather, they are opinions on issues reserved to the Commissioner.  20 C.F.R. § 404.1527(e); see also Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)(opinion of treating physician "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.")

13

Here, the ALJ gave little weight to Dr. Michels' opinion that Marcher was incapable of employment, and to Dr. Michels' opinion Marcher had no lifting capability. *Tr.* 17. The ALJ was under no obligation to give special significance to Dr. Michels' opinion Marcher could not work, because, as the ALJ noted, this was not a medical opinion, but an opinion on an issue reserved to the Commissioner. Thus, the ALJ did not err in discounting this portion of Dr. Michels' opinion.

The ALJ did not, however, properly discount Dr. Michels' opinion regarding Marcher's lifting ability. The ALJ gave this opinion little weight, stating it was not supported by any objective evidence in the file. *Tr.* 17. But the file reveals a woman over sixty years old who weighed 300 pounds (*Tr. 16)*, and had a history of back and neck surgery, with continuing back pain. This evidence amounts to objective support for Dr. Michels' opinion that Marcher had no lifting capability due to back pain. The ALJ did not cite to specific, legitimate reasons, based on substantial evidence, for discounting this portion of a treating physician's opinion.

In an attempt to provide additional support to the ALJ, the Commissioner notes in his brief that Dr. Michels' opinion of Marcher's lifting ability was inconsistent with other substantial evidence in the record, such as Marcher's own testimony, *Tr.* 314, and Dr. Michels' assessment of her functional capacity. *Tr.* 285. These inconsistencies would provide a possible reason to reject Dr. Michels' opinion on this point if the ALJ had expressly relied on them, but he did not. This Court can affirm the ALJ only on the grounds asserted by the ALJ. Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050,

14

1054 (9th Cir. 2006).

Finally, the Court notes there is no evidence that the ALJ gave meaningful consideration to Dr. Thigpen's opinion that Marcher had fatigue due to sleep apnea. *Tr.* 15.  Dr. Thigpen, a treating physician, opined that Marcher's apnea was severe enough to cause fatigue and impact her ability to function during the day.  *Tr.* 289.  Indeed, Marcher's polysomnogram indicated that her oxygen saturation dropped to 58% (as opposed to the normal 90%) during sleep due to apnea.  *Id.*   Dr. Thigpen also stated Marcher was having difficulty using the CPAP device.  *Id.*

There is no indication that the ALJ gave Dr. Thigpen's opinion the consideration it was due.  In fact, the ALJ incorrectly states, "there are no records in the file indicating if the claimant's use of this CPAP device ... will remedy her sleep apnea problems .... there is no evidence that this impairment significantly limits his [sic] physical or mental ability to perform basic work activities."  *Tr.* 14.  In fact, Dr. Thigpen's statement in the file indicated the CPAP device had not yet remedied Marcher's apnea, and was evidence that Marcher's mental ability to work was limited by apnea.  There was no medical evidence to indicate that this condition had been, or could be, remedied due to Marcher's problems with using the CPAP device. I

In conclusion, the ALJ's reasons for rejecting Marcher's testimony are legally insufficient.   Likewise, the ALJ did not provide legally sufficient justification for giving reduced weight to the opinions of Marcher's treating physicians, Dr. Michels and Dr. Thigpen.   Had the ALJ properly credited Marcher's testimony and the opinions of her

physicians, it is clear from the record that Marcher would have to be found disabled.

Thus, remand for calculation of benefits is appropriate.  Orn v. Astrue, 495 F.3d 625,

640 (9th Cir. 2007).

## V.     CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision and the

Appeals Council's conclusion are not supported by substantial evidence, and that when

Marcher and her physicians are properly credited, the Commissioner would be required

to find Marcher was disabled.  Therefore,

**IT IS RECOMMENDED** that the Commissioner's motion for summary judgment

(Court's Doc. No. 13) be **DENIED**, Marcher's motion for summary judgment (Court's

Doc. No. 11) be **GRANTED**, and the Commissioner's decision be **REVERSED** and the

case **REMANDED** for calculation of benefits.

**IT IS FURTHER ORDERED** that the Clerk shall serve a copy of these Findings

and Recommendation of the United States Magistrate Judge upon the parties.  The

parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation portion must be filed with the Clerk of Court and copies served on

opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this 16th day of November, 2007.

Carolyn S. Ostby
United States Magistrate Judge

16